USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: 7/9/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YURI PEREZ FARIAS,

Plaintiff,

-against-

RAINBOW CLEANING SERVICE, LLC, *et al.*,

Defendants.

23-CV-03751 (PAE) (BCM)

**REPORT AND RECOMMENDATION TO THE HON. PAUL A. ENGELMAYER**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Yuri Perez Farias is a former employee of defendant Rainbow Cleaning Service, LLC (Rainbow Cleaning), owned and/or operated by defendants Andrii Gurskyi and Irina Shebshenko. In this action, plaintiff seeks damages for unpaid overtime wages, liquidated damages, statutory penalties, prejudgment interest, and attorneys' fees and costs, pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et. seq.*, and N.Y. Labor Law (NYLL) §§ 190 *et seq. See* Compl. (Dkt. 1) ¶¶ 1-2, 51-73. On July 17, 2024, the Honorable Paul A. Engelmayer, United States District Judge, granted plaintiff's motion for default judgment against all defendants (Dkt. 55) and referred the matter to me for an inquest into damages. (Dkt. 56.)

After careful review of the record, I conclude that plaintiff should be awarded damages against all defendants in the aggregate amount of $14,467, comprising $7,233.50 in unpaid overtime wages and $7,233.50 in liquidated damages, plus prejudgment interest on the unpaid wages at the rate of 9% per year, running from January 1, 2023, to the date of entry of final judgment. Additionally, plaintiff should be awarded $14,982 in attorneys' fees and $866.60 in litigation costs, making the total recommended award $30,315.60, plus prejudgment interest.

# I. BACKGROUND

## A. Factual Allegations

The individual defendants, Gurskyi and Shebshenko, owned and/or operated defendant Rainbow Cleaning, a home cleaning service company located at 453 West 47th St, New York, New York, for which plaintiff worked as a housekeeper for approximately five months, from October 2022 through March 2023. Compl. ¶¶ 6-7, 9. At all relevant times, each individual defendant was an "owner, officer and/or agent" of the corporate defendant, Rainbow Cleaning. *Id.* ¶¶ 16, 17, 22-23, 27-29. Gurskyi and Shebshenko "possess[ed] operational control over [Rainbow Cleaning], possess[ed] an ownership interest in [Rainbow Cleaning], and control[ed] significant functions of [Rainbow Cleaning]." *Id.* ¶ 28. The two also possessed "substantial control" over plaintiff's work schedule and conditions of employment; determined the rate and method of her payment; and had the authority to hire and fire her. *Id.* ¶¶ 18, 24, 30, 35. Further, at all relevant times, defendant Rainbow Cleaning had an annual gross revenue of at least $500,000 and had employees "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce." *Id.* ¶ 10.

Defendants employed plaintiff as a housekeeper. *See* Compl. ¶¶ 6, 7, 39. She typically worked seven days per week, beginning at 8:00 a.m. or 9:00 a.m. and working until 7:00 p.m. or 8:00 p.m. (11 hours), for a total period of approximately 77 hours each week. *Id.* ¶ 40. From October 11, 2022, to March 23, 2023, defendants paid plaintiff $17 per hour for all hours worked. *Id.* ¶ 41. Defendants did not pay her any overtime premium, *id.* ¶¶ 42, 57, 59, 63-65; failed to provide a written wage notice setting forth, *inter alia*, her rate of pay and the employer's regular pay day, *id.* ¶¶ 46, 48, 68-69; and failed to furnish written wage statements listing, *inter alia*, the dates of work covered by each payment of wages, the number of regular hours worked, and the

number of overtime hours worked. *Id.* ¶¶ 47, 72. Additionally, to the best of plaintiff's knowledge, defendants did not use a time-tracking device, such as "sign in sheets or punch cards," to accurately track the number of hours worked by plaintiff. *Id.* ¶ 45.

**B. Procedural History**

Plaintiff filed this action on April 12, 2023, in the United States District Court for the Eastern District of New York, alleging four causes of action: (1) violation of the FLSA's overtime provision, 29 U.S.C. § 207(a)(1), *see* Compl. ¶¶ 55-60; (2) violation of the applicable New York overtime provisions, 12 N.Y.C.R.R. § 142-2.2 (Miscellaneous Industries and Occupations Wage Order), *see id.* ¶¶ 61-66; (3) violation of the NYLL's wage notice requirement, NYLL § 195(1), *see id.* ¶¶ 67-70; and (4) violation of the NYLL's wage statement requirement, NYLL § 195(3). *See id.* ¶¶ 71-73. On May 2, 2023, the Hon. Dora Irizarry, United States District Judge, transferred the case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) (*see* Dkt. 10), and, on May 4, 2023, the case was referred to me for general pretrial management. (Dkt. 14.)

Meanwhile, on April 21, 2023, defendant Rainbow Cleaning was served with process in accordance with Fed. R. Civ. P. 4(h) and N.Y.C.P.L.R. § 311(a)(1), by delivery of the summons and complaint to the New York Secretary of State. (Dkt. 9.) On October 24, 2023, – at which point there was no answer or appearance from Rainbow Cleaning – I ordered plaintiff to either file a stipulation granting Rainbow Cleaning additional time or apply for a certificate of default. (Dkt. 27.) On November 1, 2023, plaintiff filed a proposed certificate of default and supporting affirmation. (Dkts. 28-29.) There is no indication on the docket that plaintiff served Rainbow Cleaning with these materials, as required by Local Civil Rule 55.1(a)(4). However, that same day, the Clerk of Court issued the certificate of default as to defendant Rainbow Cleaning. (Dkt. 30.)

On November 1, 2023, I granted plaintiff's motion for leave to serve the individual defendants by alternative means (via iMessage, WhatsApp, and email), *see* 11/17/23 Order (Dkt. 33) at 1, and, on December 20, 2023, they were both served with process in accordance with my order. *See* 12/29/23 Aff. of Serv. (Dkt. 38) at 1. On January 2, 2024, I directed the individual defendants to answer or otherwise respond to the complaint no later than January 11, 2024 (Dkt. 39), and directed plaintiff to serve a copy of my January 2 order upon them, which she did. *See* 1/3/24 Aff. of Serv. (Dkt. 40) at 1.

On January 18, 2024 – at which point neither individual defendant had answered or appeared – plaintiff filed proposed certificates of default as to both of them, together with a supporting affirmation. (Dkts. 41-43.) Once again, there is no indication on the docket that plaintiff served the defendants with these materials, as required by Local Civil Rule 55.1(a)(4). However, that same day, Clerk of Court issued the requested certificates of default. (Dkts. 44, 45.)

On January 31, 2024, the Hon. Paul A. Engelmayer, United States District Judge, directed plaintiff to file a motion for default judgment against all three defendants. (Dkt. 46.) On March 14, 2024, plaintiff filed that motion (Dkt. 49), supported by a memorandum of law (Dkt. 50), plaintiff's affidavit (Dkt. 51), and an attorney declaration (Dkt. 52). On June 18, 2024, Judge Engelmayer issued an Order to Show Cause (OSC) (Dkt. 53) directing defendants to file any response to the default judgment motion no later than July 9, 2024. On June 20, 2024, plaintiff served the OSC on all three defendants, along with her default judgment motion and supporting papers, by overnight mail and via the alternative means previously approved. *See* 6/20/24 Aff. of Serv. (Dkt. 54) at 1. Defendants did not respond to the OSC.

On July 17, 2024, Judge Engelmayer granted plaintiff's motion for a default judgment pursuant to Fed. R. Civ. P. 55(b) and referred the matter to me for an inquest into damages.

(Dkts. 55, 56.) On July 19, 2024, I issued a Scheduling Order (Dkt. 57) directing plaintiff to file her proposed findings of fact and conclusions of law, supported by "evidence sufficient to permit the Court to 'ascertain the amount of damages with reasonable certainty,'" Sched. Order ¶¶ 1-2 (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)), and to serve my order and her inquest materials upon the defaulted defendants. *Id.* ¶ 7. The Scheduling Order gave the defaulted defendants a deadline of September 13, 2024, to oppose plaintiff's damages request. Sched. Order ¶ 8.

On August 15, 2024, plaintiff submitted her Proposed Findings of Fact and Conclusions of Law (Prop. Findings) (Dkt. 59), supported by her own affidavit (Pl. Aff.) (Dkt. 60), and the declaration of Jason Mizrahi (Mizrahi Decl.) (Dkt. 61), attaching, *inter alia*, plaintiff's proposed damages calculation (Dkt. 61-1); counsel's time records (Dkt. 61-2); and documentation of counsel's litigation expenses. (Dkt. 61-3.) That same day, plaintiff served her inquest materials upon all three plaintiffs (including, in the case of the individual defendants, by the alternative means previously approved). *See* 8/15/24 Aff. of Serv. (Dkt. 61-4) at 1.[1] Once again, defendants failed to respond.

Plaintiff requests $7,278.43 in compensatory damages for unpaid overtime wages, pursuant to 29 U.S.C. § 207(a)(1) and 12 N.Y.C.R.R. § 142-2.2, *see* Prop. Findings at 7; $7,278.43 in liquidated damages with respect to the unpaid overtime wages, pursuant to 29 U.S.C. § 216(b) and NYLL § 663(1), *see id.*; and $10,000 in statutory penalties, pursuant to NYLL §§ 195(1) and (3), for failure to provide the required wage statements and notice. *See id.* at 10. In addition, plaintiff requests that the Court award $19,594.10 in attorneys' fees, and $866.60 in litigation costs, *see id.*

[1] On March 28, 2025, plaintiff again served her inquest materials on the defaulted defendants. *See* 3/28/25 Aff. of Serv. (Dkt. 63) at 1-2. However, there is no indication on the docket that plaintiff ever served my Scheduling Order on the defaulted defendants.

at 12-13, plus prejudgment interest, at the rate of 9%, on plaintiff's compensatory damages award. *Id.* at 10-11, 13.

## II. ANALYSIS

### A. Legal Standards

#### 1. Determining Liability

Following a default, all well-pleaded factual allegations in the complaint are "deemed admitted" for purposes of liability. *S.E.C. v. Razmilovic*, 738 F.3d 14, 19 (2d Cir.), *as amended*, (Nov. 26, 2013); *accord City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). Thus, after default, "a court is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]" *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015) (summary order).

If the well-pleaded factual allegations establish the defaulting party's liability, the only remaining issue is "whether [p]laintiff has provided adequate support for the relief it seeks." *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing *Credit Lyonnais*, 183 F.3d at 155). Conversely, if the well-pleaded factual allegations in the complaint fail to state a claim upon which relief can be granted, no damages can be awarded, even if the post-default inquest submissions supply the missing information. *See United States ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Envtl. Universal Servs., Inc.*, 2014 WL 4652712, at *4 (S.D.N.Y. Sept. 2, 2014) (holding that "'[i]t is the . . . [c]omplaint, not the inquest submissions, that establishes defendants' liability'") (alteration in original) (quoting *Gutman v. Klein*, 2010 WL 4975593, at *10 (E.D.N.Y.

Aug. 19, 2010)); *J & J Sports Prods., Inc. v. Abdelraouf*, 2019 WL 457719, at *2 (E.D.N.Y. Feb. 5, 2019) ("It is the moving party's burden to demonstrate that it is entitled to recovery based on the factual allegations pleaded in the complaint.").

**2. Determining Damages**

Although the Court must accept all well-pleaded facts as true when determining liability following a default, it need not – and indeed cannot – rely on the allegations in the plaintiff's complaint to establish her damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Rather, a plaintiff is required to substantiate her damages claim with "admissible, authenticated evidence." *McLaughlin v. Barron*, 2018 WL 1872535, at *2 (S.D.N.Y. Jan. 24, 2018), *adopted*, 2018 WL 993627 (S.D.N.Y. Feb. 20, 2018), and that evidence must be sufficient to "ascertain the amount of damages with reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155; *see also House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("[T]here must be a basis upon which the court may establish damages with reasonable certainty.").

The "reasonable certainty" standard does not require a plaintiff in a wage and hour case to submit a complete set of employment records. Where, as here, the defaulted defendants have failed to produce any employment records, the Court may award damages if the plaintiff "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference," even if the result is only "approximate." *Santana v. Latino Express Rests., Inc.*, 198 F. Supp. 3d 285, 292 (S.D.N.Y. 2016); *see also Liu v. Jen Chu Fashion Corp.*, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004) (collecting cases); *accord Lemus v. Pezzementi*, 2023 WL 6519723, at *5 (S.D.N.Y. June 16, 2023), *adopted*, 2023 WL 6390170 (S.D.N.Y. Sept. 29, 2023); *Lopez v. 1923 Sneaker, Inc.*, 2021 WL 1845057, at *5 (E.D.N.Y. Mar. 5, 2021), *adopted*, 2021 WL 1259623

(E.D.N.Y. Apr. 6, 2021). At the same time, the Court "must ensure that [plaintiff's] approximations and estimates are reasonable and appropriate." *Perez Garcia v. Hirakegoma Inc.*, 2020 WL 1130765, at *4 (S.D.N.Y. Mar. 9, 2020) (quotation omitted); *see also Jemine v. Dennis*, 901 F. Supp. 2d 365, 378 (E.D.N.Y. 2012) (finding that plaintiffs' method of estimating hours worked, by averaging the hours listed in the available payroll records with the hours described in plaintiffs' declarations, was reasonable).

**B. Jurisdiction and Venue**

I am satisfied that this Court has subject-matter jurisdiction over plaintiff's claims. Because plaintiff sues under a federal statute – the FLSA – subject-matter jurisdiction properly lies pursuant to 28 U.S.C. § 1331. The Court may exercise supplemental jurisdiction over her state law NYLL claims, which arise out of the same facts and circumstances. *See* 28 U.S.C. § 1367(a).

I am also satisfied as to personal jurisdiction over the defendants, which is "a necessary prerequisite to entry of a default judgment." *Reilly v. Plot Commerce*, 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016) (quoting *Sheldon v. Plot Commerce*, 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016), *adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016). Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

**C. Statute of Limitations**

Claims under the FLSA are subject to a two-year statute of limitations, unless the violations were "willful," in which case the limitations period is three years. 29 U.S.C. § 255(a). Claims under the NYLL are subject to a six-year statute of limitations, regardless of willfulness. *See* NYLL § 198(3). Here, all of the work for which plaintiff seeks compensation was performed within one year before she filed this action on April 12, 2023. *See* Compl. ¶ 7 (alleging that plaintiff worked

for defendants from October 11, 2022, through March 23, 2023). Therefore, her claims are timely under both the FLSA and the NYLL.

### D. Service of the Default Materials

Before addressing the adequacy of plaintiff's factual allegations, I must consider whether her failure to serve defendants with her initial requests for certificates of default, as required by Local Civil Rule 55.1(a)(4), and her failure to serve defendants with my Scheduling Order, in violation of ¶ 7 of that Order, are fatal to her quest for a damages judgment against them. I conclude that the Court has the discretion to overlook these lapses. Indeed, "several judges in this District have concluded that where, as here, the defaulted defendant was properly served with the summons and complaint, but failed to answer or otherwise respond to the lawsuit, a damages judgment may be entered without proof that the default motion papers (or any additional papers beyond the summons and complaint) were also served on that defendant." *Flores Garcia v. Grocery-Taqueria Mexicana Corp.*, 2022 WL 17979917, at *4 (S.D.N.Y. Nov. 29, 2022) (citing *Moskovitz v. La Suisse*, 2013 WL 6197163, at *3 (S.D.N.Y. Nov. 25, 2013)), *adopted*, *Garcia v. Grocery-Taqueria Mexicana Corp.*, 2022 WL 17978895 (S.D.N.Y. Dec. 28, 2022); *see also Allstar Mktg. Grp, LLC v. Adfaderal*, 2021 WL 5362640, at *3 n.7 (S.D.N.Y. Sept. 20, 2021) (assessing damages against defendants who were never served with the court's inquest scheduling order or plaintiff's inquest submissions "because neither Federal Rule of Civil Procedure 55(b)(2) nor the SDNY local rules require that the clerk's certificate be served upon an opposing party who has not appeared and because every one of the Defendants was successfully served with the prior pleadings"), *adopted*, 2021 WL 4892866 (S.D.N.Y. Oct. 19, 2021).

In this case, all three defaulted defendants were served with the summons and Complaint but failed to appear and defend. *See* 12/29/23 Aff. of Serv. They were also served with plaintiff's

default motion papers and Judge Engelmayer's OSC. *See* 6/20/24 Aff. of Serv. The OSC warned them that they were required to act by July 9, 2024, if they wished to oppose plaintiff's motion for the entry of a default judgment. Thereafter, they were served with plaintiff's inquest materials – twice. *See* 8/15/24 Aff. of Serv.; 3/28/25 Aff. of Serv. Neither the Due Process Clause nor Rule 55 of the Federal Rules of Civil Procedure requires more than this. *See GS Holistic, LLC v. Amazing Store & Smoke Shop Inc.*, 2026 WL 1640476, at *2 n.3 (S.D.N.Y. May 6, 2026) ("Here, Plaintiff served Saleha with the summons and Amended Complaint, along with the Motion and Damages Submissions, so Saleha, despite having not been served with the Inquest Order, had sufficient notice of the potential for a default judgment in this case."), *adopted*, 2026 WL 1637997 (S.D.N.Y. June 5, 2026). Consequently, although I do not condone plaintiff's failure to comply with the Local Civil Rules – and my Scheduling Order – I will proceed to review her inquest submissions on the merits.

**E. Liability**

To state a claim under the FLSA, a plaintiff must allege (1) that there existed an employee-employer relationship between her and the defendants; (2) that her work involved interstate commerce; and (3) for claims involving unpaid wages, the hours worked for which wages were not received. *Zhong v. Aug. Aug. Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007). "The requirements to make out a claim under the NYLL mirror the FLSA in most respects[,]" *Reyes v. Lincoln Deli Grocery Corp.*, 2018 WL 2722455, at *3 (S.D.N.Y. June 5, 2018), *order clarified*, 2018 WL 3105070 (S.D.N.Y. June 25, 2018), except that the NYLL "does not require a plaintiff to show that the employer was involved in interstate commerce or had $500,000 in minimum annual sales," as required for the "interstate commerce" element of an FLSA claim. *Id.*

### 1. Employee-Employer Relationship

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. §§ 203(d), (g); *Zhong*, 498 F. Supp. 2d at 628. The Supreme Court has emphasized that the FLSA defines "employer" with "striking breadth." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992). Additionally, an individual may have multiple "employers," and "all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA." *Castillo v. Albert Einstein Coll. of Med. Inc.*, 2025 WL 692124, at *3 (S.D.N.Y. Mar. 4, 2025) (cleaned up).

To determine whether a plaintiff is an "employee" of a particular "employer" for FLSA purposes, courts examine the "economic reality" of the working relationship. *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013); *accord Perez Perez v. Escobar Constr., Inc.*, 2024 WL 3594325, at *2 (2d Cir. July 31, 2024) (summary order); *Galvez v. InvestCloud*, 822 F. Supp. 3d 382, 390 (S.D.N.Y. 2026). Four factors guide courts in applying the economic reality test: whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 105 (quoting *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984)). The inquiry considers the "totality of circumstances," so "[n]o single factor is dispositive." *Feng Chen v. Patel*, 2019 WL 2763836, at *5 (S.D.N.Y. July 2, 2019).

"[C]ourts have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011) (alteration in original) (quoting *Jiao v. Shi Ya Chen*,

2007 WL 4944767, at *9 n.12 (S.D.N.Y. Mar. 30, 2007)); *see also Wang v. Leo Chuliya, Ltd*, 2024 WL 324789, at *4 (S.D.N.Y. Jan. 29, 2024) ("Because the two statutory definitions are nearly identical, courts in this Circuit have interpreted 'employer' under the NYLL in the same way they interpret 'employer' in the FLSA.") (quoting *Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 372 (S.D.N.Y. 2022)). The crucial inquiry in determining the existence of an employer-employee relationship is the "degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) (citing *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198, 770 N.Y.S.2d 692 695 (2003)).

Here, plaintiff has adequately alleged that she was employed by the corporate defendant Rainbow Cleaning, as well as by the individual defendants Gurskyi and Shebshenko. *See* Compl. ¶¶ 12, 19, 25. Plaintiff worked as a housekeeper for Rainbow Cleaning. The individual defendants owned and operated Rainbow Cleaning, established plaintiff's working hours, controlled the conditions of plaintiff's employment, determined the rate and method of plaintiff's payment, and had the authority to hire and fire plaintiff. *See* Compl. ¶¶ 6-7, 16-18, 22-24, 27-30, 35. These facts, taken as true after default, satisfy the definition of employer under both federal and state law. Moreover, plaintiff alleges that Rainbow Cleaning "had and continues to have an annual gross volume of sales of not less than $500,000.00," *id.* ¶ 10, and that it "had and continues to have employees engaged in commerce or in the production of goods and services for commerce." *Id.* Thus, plaintiff has adequately alleged that defendants engaged in interstate commerce for purposes of the FLSA.

### 2. Unpaid Overtime Wages

Under both the FLSA and the NYLL, an employer is required to pay an overtime rate of one and one-half times the employee's "regular rate" of pay for hours worked in excess of 40 per week. 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2. To state an overtime claim, "a plaintiff must allege only that she worked compensable overtime in a workweek longer than forty hours, and that she was not properly compensated for that overtime." *Tackie v. Keff Enters. LLC*, 2014 WL 4626229, at *3 (S.D.N.Y. Sept. 16, 2014) (citing *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 199-201 (2d Cir. 2013)). Here, plaintiff alleges that, from October 11, 2022, to March 23, 2023, she worked "from 8:00 a.m. or 9:00 a.m. to 7:00 p.m. or 8:00 p.m.," seven days per week, for a total of "approximately 77 hours during each of the weeks." Compl. ¶ 40. She further alleges that, at all relevant times, defendants "did not pay [her] at the rate of one and one-half times her hourly wage rate for hours worked in excess of forty per workweek." *Id.* ¶ 42. Thus, plaintiff has adequately stated a claim for unpaid overtime wages under the FLSA and the NYLL.

### 3. WTPA Statutory Penalties

The Wage Theft Prevention Act (WTPA), codified at NYLL § 195, requires employers to provide a written statement "with every payment of wages" that includes, *inter alia*, the dates worked during that pay period, the rate or rates of pay and the basis thereof, gross wages, deductions, allowances, and net wages. NYLL § 195(3). Additionally, "at the time of hiring," employers must provide a written wage notice – in English and in the employee's "primary language" – that includes, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other," and any "allowances, if any, claimed as part of the minimum wage," including tip allowances. NYLL § 195(1). An

employee may recover statutory damages of $250 for each workday that her employer failed to provide the wage statements required by § 195(3), and $50 for each workday that her employer failed to provide the wage notice required by § 195(1), not to exceed damages of $5,000 for each violation. NYLL § 198(1-b), (1-d). Here, plaintiff alleges that defendants failed to give her the required wage statements and notice, *see* Compl. ¶¶ 46-48, and seeks a total of $10,000 for defendants' WTPA violations. Prop. Findings ¶ 13.

"In federal court, however, plaintiffs may not collect a statutory penalty, merely upon proof of the corresponding statutory violation, absent an injury-in-fact." *Rahman v. Red Chili Indian Cafe, Inc.*, 2024 WL 5402042, at *11 (S.D.N.Y. Nov. 22, 2024), *adopted*, 2025 WL 966013 (S.D.N.Y. Mar. 31, 2025). To establish standing under the "cases and controversies" clause, *see* U.S. Const. art. III § 2, a plaintiff must first demonstrate that she suffered a "concrete and particularized injury" as a result of the violation. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see also id.* at 426 (Because the existence of a statutory prohibition or obligation does not "simply enact an injury into existence," Article III standing "requires a concrete injury even in the context of a statutory violation.") (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). In other words, "a plaintiff cannot rely on technical violations of the Labor Law but must allege actual injuries suffered as a result of the alleged . . . wage notice and wage statement violations." *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 305 (2d Cir. 2024) (internal quotation marks omitted); *see also TransUnion*, 594 U.S. at 442 (rejecting the argument that an "informational injury" with no adverse effects was sufficient to establish standing).

Here, plaintiff alleges that defendants' failure to provide the required wage statements and wage notice denied her the "statutory right to receive true and accurate information" about her employment, "resulting in the underpayment of wages." Compl. ¶¶ 46-50. Plaintiff fails, however,

to explain how this "informational injury" resulted in the underpayment of her wages, and has thus failed to show the required "actual injury." *See Guthrie*, 113 F.4th at 308 ("[U]nless the plaintiff-employee can show that he or she . . . plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages[.]"); *Quieju v. La Jugueria Inc.*, 2023 WL 3073518, at *2 (E.D.N.Y. April 25, 2023) ("Plaintiff has offered no theory as to *how* he was injured by defendants' failure to provide the required documents."). Consequently, plaintiff lacks standing to seek statutory damages for defendants' violations of NYLL §§ 195(1) and 195(3).

**F. Damages**

Where a plaintiff brings claims under both the FLSA and the NYLL, she "may recover under the statute which provides the greatest amount of damages." *Gonzales Mercedes*, 2018 WL 7291452, at *5 (S.D.N.Y. Dec. 6, 2018) (quoting *Wicaksono v. XYZ 48 Corp.*, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011)), *adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011). In this case, the statute that provides the greatest amount of damages is the NYLL. As relevant here, the NYLL (but not the FLSA) permits a plaintiff to obtain both "liquidated damages and prejudgment interest." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 38 (E.D.N.Y. 2015) (citing *Begum v. Ariba Disc., Inc.*, 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015)); *see also Cano v. Tremson Recycling LLC*, 2025 WL 964552, at *13 (S.D.N.Y. Mar. 14, 2025) (finding that, because liquidated damages under the FLSA "serve, in part, as a form of compensatory pre-judgment interest," a plaintiff who "receives FLSA liquidated damages . . . may not also receive pre-judgment interest"), *adopted*, *Gonzalez v. Tremson Recycling LLC*, 2025 WL 964253 (S.D.N.Y. Mar. 31, 2025).

### 1. Unpaid Overtime Wages

Plaintiff requests compensatory damages in the amount of $7,278.43 for her unpaid overtime wages. *See* Prop. Findings at 13. Where, as here, no paystubs or other employment records are before the Court, the Court may nonetheless credit the plaintiff's "recollection and estimates of hours worked," which "are presumed to be correct." *Santana*, 198 F. Supp. 3d at 292; *see also Hernandez v. BMNY Contracting Corp.*, 2025 WL 4667144, at *6 (S.D.N.Y. Apr. 29, 2025) (collecting cases), *adopted*, 2026 WL 853165 (S.D.N.Y. Mar. 27, 2026). However, a plaintiff's "approximations and estimates" as to her unpaid overtime hours must be "reasonable and appropriate." *Perez Garcia*, 2020 WL 1130765, at *4 (citation omitted).

Plaintiff has submitted admissible evidence supporting her claim for unpaid overtime wages. In her affidavit – as in her pleading – plaintiff attests that from October 11, 2022, to March 23, 2023, she worked seven days per week, from 8:00 a.m. or 9:00 a.m. to 7:00 p.m. or 8:00 p.m. (approximately 11 hours), for a total workweek of approximately 77 hours. Pl. Aff. ¶ 5. Since 77 hours per week is consistent with what plaintiff alleged in her complaint, the Court accepts plaintiff's approximation when calculating damages. Plaintiff further attests, in her affidavit, that defendants paid her "$17 per hour" for every hour worked during the relevant time (but not more for the hours worked beyond 40 per week), *id.* ¶ 6, which is also consistent with the allegations in her pleading. Thus, the evidence is sufficient to "ascertain the amount of damages with reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155. Plaintiff's damages chart, prepared by counsel, is based on the same data, and calculates that plaintiff was underpaid by $314.50 per week (37 overtime hours multiplied by $8.50 per hour). *See* Mizrahi Decl. Ex. A (Dkt. 61-1) at ECF p. 3.

Since plaintiff worked 23 weeks plus three additional days, the Court calculates that she is owed a total of $7,233.50 in unpaid overtime wages.[2]

### 2. Liquidated Damages

Plaintiff requests liquidated damages in the amount of 100% of her unpaid overtime wages. *See* Prop. Findings at 13. NYLL § 198(1-a) allows employees to recover "an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due," unless the employer "proves a good faith basis for believing that its underpayment of wages was in compliance with the law." Here, defendants defaulted and therefore have not provided any evidence to suggest they had a "good faith basis" to believe that their payment practices complied with the law. *See Tackie v. Keff Enterprises LLC*, 2014 WL 4626229, at *5 (S.D.N.Y. Sept. 16, 2014) (recognizing that "a defaulting defendant cannot carry this burden"). Accordingly, plaintiff should be awarded 100% of her unpaid overtime wages – as calculated above – in liquidated damages. *See Zavala v. Top Shelf Elec. Corp.*, 2024 WL 1543605, at *4 (S.D.N.Y. Apr. 10, 2024) (awarding liquidated damages in the amount of 100% of plaintiffs' unpaid wages); *Cavalotti v. Daddyo's BBQ, Inc.*, 2018 WL 5456654, at *19 (E.D.N.Y. Sept. 8, 2018) (same).

### 3. Prejudgment Interest

As noted above, a wage-and-hour plaintiff may recover both liquidated damages and prejudgment interest under NYLL § 198(1)(a). *See Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) (holding that "liquidated damages under the Labor Law and pre-judgment interest serve fundamentally different purposes"); *Andrade v. 168 First Ave Rest. Ltd.*, 2016 WL 3141567, at *10 (S.D.N.Y. June 3, 2016) ("[E]ven where a plaintiff is awarded liquidated damages

[2] For her final three days of work, amounting to a total of 33 hours, plaintiff is not entitled to any overtime premium, because she did not work more than forty hours that week.

under the NYLL, prejudgment interest still is appropriate."), *adopted*, 2016 WL 3948101 (S.D.N.Y. July 19, 2016). However, because liquidated damages are considered punitive under the NYLL, while prejudgment interest "compensate[s] a plaintiff for the loss of use of money," *Reilly*, 181 F.3d at 265 (quoting *Chandler v. Bombardier Capital Inc.*, 44 F.3d 80, 83 (2d Cir. 1994)), "[p]rejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages." *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, 2016 WL 4704917, at *18 (S.D.N.Y. Sept. 8, 2016) (quoting *Maldonado v. La Nueva Rampa, Inc.*, 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012)), *adopted*, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016).

New York's prejudgment interest rate is 9% per annum, *see* CPLR § 5004(a), and is computed "on a simple interest basis." *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998). "Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." CPLR § 5001(b); *see also Marfia*, 147 F.3d at 91 ("New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date,' which can be used to simplify the calculation.") (quoting *155 Henry Owners Corp. v. Lovlyn Realty Co.*, 647 N.Y.S. 2d 30, 32 (2d Dep't 1996)). In wage and hour cases, courts often calculate prejudgment interest from the midpoint of the plaintiff's employment. *See Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012) (collecting cases). Here, the midpoint of the period for which plaintiff is owed damages (October 11, 2022, through March 23, 2023) is December 31, 2022. The interest accrued from January 1, 2023, through December 31, 2025, is $1,953.01 ($7,233.50 × 0.09 × 3). For the period following December 31, 2025, the interest is calculated by multiplying the total compensatory damages by 9% and then dividing the sum by 365, which produces a daily rate. *See*

*Hernandez*, 2025 WL 4667144, at *16 (collecting cases). Thus, interest has been accruing since January 1, 2026, at the rate of $1.78 per day ($7,233.50 × 0.09/365).

**G. Attorneys' Fees and Costs**

Plaintiff requests an award of $19,594.10 in attorneys' fees and $866.60 in litigation costs. Prop. Findings at 12-13. The NYLL allows a successful plaintiff to recover reasonable attorneys' fees. NYLL §§ 198, 663(4). To determine a "presumptively reasonable fee," courts utilize the lodestar approach: multiplying a reasonable hourly rate and the reasonable number of hours required by the case. *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). "The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotations omitted); *accord Mondragon v. Keff*, 2019 WL 2551536, at *12 (S.D.N.Y. May 31, 2019).

In determining whether an hourly rate is reasonable, "the court should apply the prevailing rate within the district for similar services by lawyers of comparable experience and skill." *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 323 (S.D.N.Y. 2014) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)). In this district, the typical rate for experienced attorneys in wage-and-hour cases generally ranges from $300 to $400 per hour, *Rahman*, 2024 WL 5402042, at *12 (collecting cases), although, in certain cases, rates of up to $500 an hour have been found reasonable. *See, e.g.*, *De Lancer v. Morgan Group LLC*, 2026 WL 1661422, at *4 (S.D.N.Y. June 8, 2026); *Martinenko v. 212 Steakhouse, Inc.*, 2024 WL 5199792, at *3-4 (S.D.N.Y. Dec. 23, 2024).

**1. Reasonable Hourly Rate**

Plaintiff was represented throughout this litigation by Levin-Epstein & Associates, P.C. (LEA). The work was performed by attorneys Joshua D. Levin-Epstein and Jason Mizrahi, together with paralegals Hugo Espinoza and Alexis Abrego.

Attorney Levin-Epstein is the founder and "managing member" of LEA and has been in practice since 2006. Mizrahi Decl. ¶¶ 4-5. He seeks a rate of $450 per hour. *Id.* ¶ 4. Attorney Mizrahi is an associate at the firm and has been practicing employment litigation since 2016. *Id.* ¶ 7. He seeks a rate of $350 per hour. *Id.* In 2022, the Eastern District of New York found that Levin-Epstein's requested hourly rates of $325 to $425 and Mizrahi's requested hourly rates of $175 to $225 were reasonable. *See Singh v. Lintech Electric, Inc.*, 2022 WL 1422311, at *8 (E.D.N.Y. Mar. 3, 2022). Since then, both attorneys have become more experienced, and inflationary pressures have pushed hourly rates upward for attorneys at all experience levels. Moreover, the rates they request in this case fall within the current range of reasonableness in this District. *See, e.g.*, *Sharma v. Eyebrows on 125th, Inc.*, 2026 WL 1758670, at *3 (S.D.N.Y. June 18, 2026) (approving $400 per hour for a senior attorney in a wage and hour case); *Lee v. Mani & Pedi Inc.*, 2022 WL 3645118, at *4 (S.D.N.Y. Aug. 24, 2022) (noting that fees are typically awarded at rates "between $250.00 and $450.00 per hour in FLSA cases, deeming the upper range appropriate for the most experienced FLSA litigators"). I therefore accept the hourly rates of $450 for Levin-Epstein and $350 for Mizrahi as reasonable.

In addition, plaintiff seeks $100 per hour for work by paralegal Espinoza, and $50 per hour for paralegal Abrego. Hourly rates for paralegals as high as "$100 to $150 per hour are typical for awards in this District" in FLSA cases. *Varghese v. Plecosystems, Inc.*, 2026 WL 475949, at *2 (S.D.N.Y. Jan. 22, 2026), *adopted*, 2026 WL 475008 (S.D.N.Y. Feb. 19, 2026) (quoting *Inga v.*

*Nesama Food Corp.*, 2021 WL 3624666, at *14 (S.D.N.Y. July 31, 2021)). I therefore find the requested rates for both LEA paralegals to be reasonable.

**2. Reasonable Hours Expended**

An application for attorneys' fees must include "contemporaneous time records" that specify "the date, the hours expended, and the nature of the work done." *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022). The Court may disregard "claimed hours that it views as excessive, redundant, or otherwise unnecessary." *Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 656 (S.D.N.Y. 2019) (quoting *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009)) (internal quotations omitted). "However, because '[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection,' courts 'need not, and indeed should not, become green-eyeshade accountants.'" *Chen v. Lilis 200 W. 57th Corp.*, 2023 WL 9955610, at *5 (S.D.N.Y. Nov. 30, 2023) (alteration in original) (quoting *Hines v. City of Albany*, 613 F. App'x 52, 54 (2d Cir. 2015) (summary order)). Accordingly, if the hours claimed appear excessive, district courts have "discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Id.* (citation omitted); *accord Williams*, 368 F. Supp. 3d at 656-57 ("Courts in this Circuit have recognized a district court's authority to make across-the-board percentage cuts in hours, as opposed to an item-by-item approach, to arrive at the reasonable hours expended.").

In this case, Mizrahi submits 13 pages of timesheets, totaling 53.70 hours worked on this action by the four timekeepers discussed above, including client meetings, preparation of the Complaint, applying for certificates of default, and moving for default judgment. *See* Mizrahi Decl. Ex. B. Although plaintiff seeks $19,594.10 in attorneys fees, *see* Prop. Findings at 12-13, the LEA billing records only substantiate fees amounting to $18,727.50. *See* Mizrahi Decl. Ex. B.

Additionally, nearly half of the time entries consist of email communications with paralegals and process servers, billed in 0.10-hour increments. *See id.* at ECF pp. 6-11. "While such entries are not improper in isolation, courts have recognized that the cumulative effect of repeated minimum-increment billing may inflate the total hours expended, particularly where many of the communications relate to routine or administrative matters." *Song v. Doperation, Inc.*, 2026 WL 1469802, at *12 (E.D.N.Y. May 26, 2026). I note as well that several entries reveal significant time spent on relatively simple tasks. For example, on April 27, 2023, Mizrahi billed nearly two hours to draft a letter-motion and an accompanying affidavit of service, each of which is only one page in length. *See* Ex. B at ECF pp. 3-4.

Although this case required plaintiff's counsel to navigate a less-than straightforward alternative service issue, *see, e.g.*, 11/17/23 Order at 1, the case is otherwise very simple. Yet the requested hours are significantly higher than those ordinarily approved in this District for single-plaintiff FLSA/NYLL default cases. *See, e.g.*, *Zhen Ming Chen v. Y Cafe Ave B Inc.*, 2019 WL 2324567, at *5 (S.D.N.Y. May 30, 2019) (28.4 hours was reasonable in an FLSA/NYLL default case involving one plaintiff); *Tackie*, 2014 WL 4626229, at *7 (25.29 hours was reasonable in an FLSA/NYLL default case involving one plaintiff). Although higher hours are occasionally awarded, this usually occurs in cases with additional levels of complexity. *See, e.g.*, *Rodriguez v. MRC Bakery Corp.*, 802 F. Supp. 3d 393, 433-34 (E.D.N.Y. 2025) (collecting cases) (approving 56.5 hours, mostly billed by paralegals, in light of "multiple submissions" documenting translation services, but recognizing the number of hours "is higher than is typical in cases of this nature").

In this case, I conclude that 53.7 hours is unreasonably high for the services performed, such that a 20% across-the-board reduction is warranted. *See Chen v. L & H Wine & Liquor, Inc.*, 2025 WL 733368, at *5 (S.D.N.Y. Mar. 7, 2025) (adopting 20% across-the-board reduction where

billing records revealed, *inter alia*, repetitive entries and excessive billing); *Song*, 2026 WL 1469802, at *13 (applying 25% across-the-board reduction in single-plaintiff wage-and-hour case where portions of the hours expended consisted of numerous, repetitive entries in 0.10 to 0.30-hour increments or involved service-related tasks); *Jones v. Pawar Bros. Corp.*, 2023 WL 6214213, at *13 (E.D.N.Y. Sept. 25, 2023) (applying 18% reduction in the total fee in light of the straightforward nature of the case and repeated 0.10 hour billings for email correspondence). Consequently, plaintiff should be awarded $14,982 (80% of $18,727.50) in attorneys' fees.

**3. Costs**

Under the NYLL, a prevailing plaintiff may also recover her reasonable litigation costs. *See* NYLL § 663(1). "An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney,'" but "[t]he fee applicant must submit adequate documentation supporting the requested . . . costs." *Chen*, 2023 WL 9955610, at *11 (S.D.N.Y. Nov. 30, 2023) (alteration in original) (quoting *Fisher v. SD Protection, Inc.*, 948 F.3d 593, 600 (2d Cir. 2020)). "Court fees reflected on the Court's docket are sufficiently substantiated, as are costs for which a claimant provides extrinsic proof, such as invoices or receipts." *Id.* (quoting *Guo v. Tommy's Sushi, Inc.*, 2016 WL 452319, at *3 (S.D.N.Y. Feb. 5, 2016)).

Here, plaintiff seeks $866.60 in out-of-pocket litigation costs, including her $402 filing fee and service of process fees amounting to $464.60. Prop. Findings at 13. Plaintiff submits postage receipts and invoices substantiating the service of process fees. Mizrahi Decl. Ex. C at ECF pp. 3-11. I find that these costs are reasonable and adequately documented. Consequently, plaintiff should be awarded $866.60 for her litigation costs.

## III. CONCLUSION

For the reasons set forth above, I recommend, respectfully, that plaintiff be awarded damages against all three defaulted defendants, jointly and severally, in the aggregate amount of **$14,467**, comprising **$7,233.50** in unpaid overtime wages and **$7,233.50** in liquidated damages under state law, plus prejudgment interest at the rate of 9%, running from January 1, 2023, to the date of entry of final judgment.[3] I further recommend that plaintiff be awarded **$14,982** in attorneys' fees and **$866.60** in litigation costs. The total recommended award is **$30,315.60**, plus prejudgment interest.

Dated: New York, New York
July 9, 2026

**BARBARA MOSES**
**United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), unless they receive this Report and Recommendation solely by mail, in which case they have 17 days from the date on which it was mailed. *See* Fed. R. Civ. P. 6(a), 6(d). Any objections must be filed with the Clerk of the Court, and addressed to the Hon. Paul A. Engelmayer, in accordance with his individual practices. Any request for an extension of the deadline to file objections must also be directed to Judge Engelmayer. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

[3] As of the date of this Report and Recommendation, the accrued interest comes to $2,291.21 ($1,953.01 + ($1.78 × 190)). It will continue to accrue, at the rate of $1.78 per day, until judgment is entered.